IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 NOV 29 PM 5: 11

THOMAS M. GOULD
CLERK, US DISTRICT COURT
W/D OF TN, MEMPHIS

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )
                                )
v.                              )       No.  04-20432 Ml
                                )
AARON HOPE,                     )
                                )
        Defendant.              )

---

ORDER ON DEFENDANT'S MOTION TO SET ASIDE GUILTY PLEA

---

This cause is before the Court on the motion of Defendant,
Aaron Hope, through his counsel, Dewun R. Settle, to set aside
the guilty plea entered on June 9, 2005.  On that date, Defendant
pled guilty to a one-count indictment charging a violation of 18
U.S.C. § 922(g).  The United States opposes the withdrawal of
Defendant's guilty plea.


The withdrawal of guilty pleas is governed by Rule 11(d) &
(e) of the Federal Rules of Criminal Procedure.  Rule 11(d)
specifically provides that:

> A defendant may withdraw a plea of guilty or
> nolo contendere: . . .
> (2) after the court accepts the plea, but
> before it imposes sentence if: . . .
> (B) the defendant can show a fair and just
> reason for requesting the withdrawal.

Federal Rule of Criminal Procedure 11(d)(2) (amended April 29,
2002).

This document entered on the docket sheet in compliance
with Rule 58 and/or 32(b) FRCrP on  11-30-05



The procedure for the required plea colloquy is set out in Federal Rule of Civil Procedure 11(b).  Federal Rule of Criminal Procedure 11(b)(2) specifically provides:

> Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in the plea agreement).

The transcript of the plea colloquy confirms that the requirements of Rule 11(b) were met and, specifically, that the Court determined, pursuant to Rule 11(b)(2) that, as of the date of the plea, the plea was voluntary and did not result from force, threats, or promises.  (Tr. at 10, ll. 8-10; Tr. at 11, ll. 19-20.)

Defendant now asserts that he "felt compelled [to plead guilty] by circumstances inherent in his change of plea" and that he "feels that his constitutional rights were violated."  Motion to Set Aside Guilty Plea, filed October 28, 2005.

In a hearing held on November 21, 2005, both the Defendant, Aaron Hope, and his former counsel, Lorna McClusky, testified. Mr. Hope asserted, in his testimony, that on June 9, 2005, he did not know he was coming to court for a change of plea and that it was "just a quick decision" and that he was "confused."  He stated that prior to June 9, 2005, he had had meeting with Ms.

2

McClusky and that they had discussed a possible change of plea but that he had "always wanted to go to trial." He indicated that he thought that by prolonging a decision regarding his change of plea, his sentencing options would become "worse."

On cross examination, he confirmed that he had met with Ms. McClusky beginning in January of 2005, and that she had explained about a guilty plea and how much time he might receive. There was a discussion regarding the possibility that he could be an armed career criminal and might be confronted with a minimum sentence of 15 years. He confirmed that when he came into court he did not raise with the court any concerns as to the plea. He also testified, however, that he always "wanted to fight my case."

It appears that at sometime after the entry of his change of plea, Mr. Hope expressed doubts regarding his change of plea to his counsel. On August 23, 2005, the Court received a letter dated August 22, 2005 from Mr. Hope expressing his desire to withdraw his plea "because it was not an informed plea." A copy of the letter is included in the correspondence contained in attached Collective Exhibit "1."[1] In his letter of August 22,

---

[1] It should be noted that a Presentence Report in this case was completed on July 25, 2005, and that the initial report did not recommend that the defendant be determined to be an armed career criminal. That report resulted in the defendant receiving a total offense level score of 21 and a criminal

2005, Mr. Hope specifically stated that his plea "was not an 'informed plea', due in part to the fact that it was not made having had the benefit of the services of an investigator to interview the witnesses in this case." <u>See</u> Collective Exhibit "1."

The second witness at the hearing was Lorna McClusky. Ms. McClusky was appointed defense counsel in the case on January 6, 2005,[2] and testified that she met with Mr. Hope either at the end of January or early February, 2005, at which time she discussed with him five options which she always discusses with every defendant: (1) the possibility that the indictment might be dismissed; (2) the possibility of a plea of guilty with no plea agreement; (3) the possibility of a plea of guilty with a plea agreement; (4) the possibility of a plea of guilty with a plea agreement and cooperation with the government; and (5) the possibility of going to trial on the matter. Ms. McClusky also indicated that they discussed the elements of the offense that

history category of V.

A revised report was submitted on November 22, 2005. The revised report recommends that Defendant be determined to be an armed career criminal based on <u>U.S. v. Chandler</u>, 419 F. 3d 484 (6th Cir. August 16, 2005).

Defendant's letter to the Court was written approximately 4 weeks after the completion of the initial Presentence Investigation Report and more than 10 weeks after the change of plea.

[2]   Ms. McClusky appeared at the arraignment with Mr. Hope on January 4, 2005. The first report date in the case was on January 20, 2005.

the government would have to prove. She noted that this case is a simple one-count indictment asserting a 922(g) violation. She indicated that a "big concern" in her conversations with Mr. Hope was the possibility that the defendant might be determined to be an armed career criminal. She pointed out to the defendant that he had two convictions that would qualify and that it was possible that a third conviction - facilitation/aggravated burglary - would qualify although, in her opinion, she felt that it would not.

Ms. McClusky related that the Defendant "did not think it was fair . . . that he was in the federal system." This was a point of apparently some discussion. The Defendant requested that Ms. McClusky obtain an agreement with the government regarding a specific sentence and she indicated she would pursue that with the government, but that the ultimate decision would be "up to the judge." Defendant also expressed a desire to pursue a claim of "prosecutorial misconduct" and Ms. McClusky advised against that. Ms. McClusky testified regarding the plea of June 9, indicating that the Defendant did not express a desire to go to trial at that time and wanted to proceed with the change of plea.

On cross examination, Ms. McClusky indicated that the discussion regarding armed career criminal occurred in either

5

late January or early February, 2005. She indicated that she "felt sorry for the Defendant because he was young, but that he did ask appropriate questions in those conversations and it was clear that he understood the material discussed." She indicated that he made the ultimate decision to plead guilty at a meeting with both Mr. Massey (Ms. McClusky's partner) and Ms. McClusky. At that time he "wanted to plead guilty." She stated that on the morning of June 9, 2005, the Defendant "seemed very comfortable" with his decision to plead guilty and that on her next meeting with the Defendant "he was still very comfortable" with his decision. It was only later that he expressed reservations.

## Analysis

As the Sixth Circuit Court of Appeals noted in USA v. Alexander, 948 F.2d 1002, 1004 (quoting United States v. Carr, 740 F.2d 339, 345 (5th Cir. 1984),

> Courts have noted that the aim of the rule [now Fed. R. Cr. P. 11(d)(2)] is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant "to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty.

USA v. Bashara, 27 F.3d 1174 at 1181 (6th Cir. 1994).

6

There are seven well established factors that the Court should consider in determining whether a defendant's motion to withdraw a guilty plea should be granted including: (1) the amount of time that has elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdraw earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocense; (4) circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted. <u>USA v. Bashara</u>, 27 F.3d at 1181. Considering the first factor, the record reflects that defendant's dissatisfaction with his plea was not immediate, but rather, evolved over time, ultimately resulting in a letter to the Court received on August 23, 2005, and Defendant's Motion to Set Aside Guilty Plea filed on October 28, 2005. The amount of time that elapsed between the plea and the Defendant's articulation to the Court of a desire to withdraw his plea, therefore, favors a determination that the motion for leave to withdraw guilty plea should not be granted.

Considering the second factor – the reason for the failure to move to withdraw earlier – it appears that there was no impediment to an earlier request or motion for leave to withdraw

7

defendant's guilty plea.  The delay in filing simply reflected the gradually evolving discontent of the Defendant with his decision.

The third factor, whether the Defendant has asserted or maintained his innocence, works decidedly against the Defendant. In the plea colloquy of June 9, 2005, Defendant admitted his possession of the firearm on the day in question.  Mr. Hope specifically stated, in his own words,

> It was on me in my back pocket, but it was
> somebody else's, and I just got caught with
> it.  I just got caught with it.

Tr. at 16, ll. 8-10 (June 9, 2005).  Clearly, Defendant has not asserted or maintained that he should be allowed to withdraw his plea because he is innocent.

Likewise, the fourth factor, the circumstances underlying the entry of the guilty plea, does not favor a grant of Defendant's motion.  It appears that the guilty plea was discussed over a number of months with counsel and that counsel advised Defendant of all the available options.  Defendant decided to plead guilty in a meeting with Ms. McClusky and her partner, Mr. Massey, on a date prior to the date of the plea itself.  During the plea itself, the Defendant was given multiple opportunities to express either dissatisfaction with counsel or

8

to raise other concerns with the Court.  Mr. Hope expressed no concerns during the change of plea.

The fifth factor to be considered in determining whether or not a motion for withdrawal of guilty plea should be granted is the Defendant's nature and background.  Initially, this would appear to favor the Defendant.  Defendant was born on January 3, 1983, and was, therefore, only 22 at the time of the entry of his plea of guilty.  Additionally, he only has a 10th grade education.  The plea colloquy, however, revealed that Defendant characterized his reading and writing ability as "very good."[3] Defendant advised the Court that he reads a lot.  He even listed authors whom he reads (Stephen King, James Patterson, Dean Koontz) and advised the Court that he is currently reading a Stephen King novel entitled It.  Tr. at 5, ll. 13-24 (June 9, 2005).  Defendant appeared confident and self assured and expressed himself well.

The sixth factor to consider is the degree to which the defendant has had prior experience with the criminal justice system.  Since 2001, Defendant has had regular contact with the criminal justice system, resulting in convictions for burglary of

---

[3]See Collective Exhibit "1" attached to this memorandum opinion. Mr. Hope, as demonstrated by his letter of August 22, 2005, expresses himself well in writing.

a habitation, robbery, theft of property, facilitation –
aggravated burglary, no driver's license, and theft of property.
He had received not only lengthy periods of probation (two years
and seven months in connection with the robbery charge), but
other periods of incarceration including up to two years
imprisonment in connection with the burglary charge.  Prior to
his adult convictions, he had experience with the juvenile court
system.  Therefore, Defendant had substantial experience with the
criminal justice system at the time of the entry of his plea.

The final factor to be considered is any potential prejudice
to the Government if the motion to withdraw is granted.  The
Government in this case argues that there will be prejudice based
on the passage of time, specifically asserting that "potential
prejudice to the Government exists due to the effect the delay
would have on the memory of witnesses."  Government's Response to
Defendant's Motion to Withdraw Guilty Plea at 4.

Based on the seven-point analysis set out in the Sixth
Circuit decisions regarding Rule 11(d) motions to withdraw a plea
of guilty, it appears that Defendant's motion should be, and
therefore is, hereby DENIED.

10

ENTERED this ⟍29 day of November, 2005.

_____
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

11

SEP - 8 2005

Your Honor: Jon P. McCalla                                    04-20432

Enclosed, you will find copies of my letter to Counsel dated August 22, 2005, the Cover-letter the Clerk of Court, the Febuary 19, 2004 Commercial Appeal article, along with a copy of the August 26, 2005 letter from Staff Attorney Patricia Dobberstein returning the aforementioned manuscript back to me.

As you can be noted from my letter to Counsel, I expressed my desire to withdraw my plea because it was not an informed plea. The only option that was conveyed to me by counsel was that of a plea-agreement. This was expressed to me in a manner that could more readily be described as a threat or intimidation. No other potential defense has ever been ~~tangibly~~ discussed. Counsel has performed no investigation or research into any other option other than a plea-agreement. I am writing this letter to you to inform you of my desire to withdraw my plea, in advance of the scheduled September 9th proceeding. Since receiving my letter, Counsel informed me that she plans to withdraw from my case but I get the impression that she is disingenuously buying time to effect some intended or anticipated reaction before or at this proceeding. I find it strange that Ms. McClusky has only now expressed a desire to withdraw from my case, after receiving this letter from me. Thank you in advance for your prompt attention to my concerns.

Expressly reserving all of my rights,
Respectfully,
Aaron Hope

COLLECTIVE EXHIBIT "1"

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT TENNESSEE

THOMAS M. GOULD
CLERK OF COURT

MEMPHIS (901) 495-1200
FAX (901) 495-1250
JACKSON (731) 421-9200
FAX (731) 421-9210

August 26, 2005

Aaron Hope - 20042-076
West Tennessee Detention Facility
P.O. Box 509
Mason, Tennessee 38049-0509

      Re:  <u>Letter received August 23, 2005</u>

Dear Mr. Hope:

On August 23, 2005, the clerk received your letter, which was dated and postmarked August 22, 2005. I have been asked to respond to you.

It is not clear why you have forwarded to the clerk of this court a copy of a letter you wrote to your attorney in connection with your pending criminal case. It is not appropriate for the clerk to file this correspondence, which should remain confidential at this stage of the proceedings. I am, therefore, returning your letter to you.

Very truly yours,

Patricia Dobberstein
Staff Attorney

Enclosures

242 FEDERAL BUILDING
167 N. MAIN STREET
MEMPHIS, TENNESSEE 38103

262 FEDERAL BUILDING
111 S. HIGHLAND
JACKSON, TENNESSEE 38301

Aaron Hope # 20042076
P.O. Box 569
Mason, TN 38049

United States District Court
Clerk of Court
950 Federal Building
Memphis, TN 38103

August 22,2005

Dear Sir:

Enclosed, you will find copies of the following documents:

1. Letter to counsel, Lorna S. McClusky, dated August 22,2005.
2. Febuary 19,2004 article " Program applies federal punch when felons com-
   mit gun crimes" from the Commercial Appeal.

Please incorporate these documents into my file and/or record of this cause,
number 20042076. Thank you in advance for your attntion to my request.

Expressly reserving all my rights,

Respectfully,

*Aaron Hope*

Aaron Hope

RECEIVED
05 AUG 23 AM 11:39
THOMAS M. GOULD
CLERK, US DISTRICT COURT
W/D OF TN, MEMPHIS

P.O. Box 509
Mason, TN 38049

Ms. Lorna S. McClusky
3074 East Street
Memphis, TN 38128

                                                           August 22, 2005

Ms. McClusky:

As I have previously expressed to you and am stating now, I would like you to
withdraw my plea. It was not an "informed plea", due in part to the fact that
it was not made having had the benefit of the services of an investigator to
interview the witnesses in this case.

Enclosed, you will find a copy of the Febuary 19, 2004, Commercial Appeal
article entitled "Program applies federal punchwhen felons commit gun crimes",
for your review in conjunction with your consideration of my previous inquiry
about this case's prospect for being sent back to the state or in alternate,
filing a motion for dismissal for Selective Prosecution. If after thereby
evaluating the points that I have raised, you should determine that there is
either merit or a lack thereof to further ( or not) explore these options,
please convey your specific response to me in writing or rather, written form
As I understand it, among other things, as a result of this program's practice
of allowing "some defendants to negotiate a longer state sentence just to stay
out of th federal arena" violates both the Fifth Amendment,  Due Process and
Equal Protection Clause, and the "fundamental principles of federalism". The
above privilege was never extended to me! Basically, there are only two elements
required to establish a violation of the 922(g) statue and any subsequent and/or
simultaneously occurring aggravating factors, if considered, are invidious and
arbitrary, as employed by this program.

Essenially, this practice violates the mandates of the Fifth Amendment by granting
an invidious privilege to a select group of individuals within a "similarly
situated" group, to the exclusion of others bearing identical statutory Classifi-
cation. The "principles of federalism" are violated by Project Safe Neighborhood's
on-going practice of allowing the U.S. Attorney's office to overreach the sovere-
ign boundaries of state authority to compel a choice between a longer sentence
as opposed to federal prosecution, thereby creating a" centralized system of
government" that is not permissible under the United States Constitution.

Expressly reserving all my rights,

                                                   Sincerely,


                                                   Aaron Hope

PS: I have also filed a copy of this correspondence along with a copy of the
    enclosed P.S.N. article from the Commercial Appeal with the clerk of the
    court.

From Page B1

# Guns

attorney, Shelby County district attorney general, Memphis Police Department, Shelby County Sheriff's Office, U.S. Marshal's Service and the federal Bureau of Alcohol, Tobacco, Firearms and Explosives.

Harris noted most serious crime is committed by repeat offenders, and the prosecution acts as a deterrent and helps keep repeat offenders off the street.

"You reduce the amount of guns on the streets and reduce spontaneous violence and shootings," he said.

In Tennessee, he said state gun laws are much weaker than federal laws and have a narrow definition of illegal gun possession. State laws also allow probationary sentences.

The average sentence is 8½ years in this district, Harris said. Federal sentences are firm, with no parole.

Nationally, critics fear such felons-with-guns programs may overload the federal court and prison systems. Some critics raise constitutional questions.

In Washington, Cato Institute legal scholar Gene Healy said state courts are the proper venue for gun possession crimes. "The federal government has no more legitimate power over these crimes than it does over drunk driving or jaywalking," he said.

Federal Public Defender Steve Shankman in Memphis



By Mike Maple

**The two year-old program has taken at least 1,000 guns — from homemade to assault rifles —off the street.**

shares those concerns.

"Federal court is not state court in a different building," Shankman said.

"No one distinguishes the guy who is pawning a gun or has a single bullet in his pocket with the guy waving a gun or using it. Some of these cases are clearly deserving of enhanced prosecution and sentencing. But many of these cases will have no effect on crime reduction but simply allow a politician to claim he or she is tough on crime."

Lt. Jeff Clark, head of the nine-member Safe Neighborhoods unit, disagreed.

"There are very few bullet cases that we have taken into the system, and in those cases, the people obviously had not reformed. They had other pending cases or violations," he said.

The program targets the community's main offenders who continue to carry guns or ammunition after they leave prison.

Every week, Safe Neighborhoods task force members meet to review local arrests and citations where firearms were seized. Investigators determine if cases should be prosecuted at the state or federal level.

The goal is to indict within 30 days, with the worst cases going through federal courts. Some defendants negotiate a longer state sentence just to stay out of the federal arena.

Another program benefit is that investigators share information that helps solve crimes.

Gene Marquez, resident ATF agent in charge of the Memphis office, said Memphis has one of the top Safe Neighborhoods programs in the country. "I think it is having an impact."

The Commercial Appeal
2-19-04 - Pg. B 1+2

(3-D-3)

# Program applies federal punch when felons commit gun crimes

**By Shirley Downing**
downing@commercialappeal.com

Raymond Tate was sorry a 10-year-old girl was shot in the head by a stray bullet, but sorry wasn't good enough.

Chalmers Brown beat a 12-year-old boy with a shotgun and wounded the boy's dog. Thirteen previous felony arrests helped seal Brown's fate.

Both men were sentenced to stiff terms in federal prison last year — Brown got 30 years and Tate got 6½ years — for being convicted felons with guns.

The convictions are part of the two-year-old Project Safe Neighborhoods program that has taken at least 1,000 guns — from a homemade "zip" gun to

revolvers and assault rifles — off the street.

"The program is out to see more than 400 felons indicted or convicted in federal and state court on firearms or ammunition possession charges in the past two years," officials said.

U.S. Atty. Terry Harris also believes the program has been a major factor locally in a 16 percent drop in firearms-related homicides in the past year.

"The goal is to reduce violent crime through prosecution of gun crimes, with special emphasis on convicted felons who possess firearms," said Harris. "Generally there is a zero tolerance for that offense."

Harris said Project Safe Neighborhoods is working well. "I can't think of a

more appropriate way to use federal law enforcement and resources to help people locally," Harris said. "It truly has a local impact because it reduces violent crimes."

The Memphis program is part of a national effort that has seen prosecutions of federal gun crimes increase 68 percent since 2000, according to the office of U.S. Atty.-Gen. John Ashcroft.

Nationally, 93 percent of such gun crime defendants were sentenced to prison last year, with about 72 percent receiving sentences of three years or more.

Project Safe Neighborhoods locally is a cooperative effort between the U.S.,

**See GUNS, B2**

## GOING AFTER GUN CRIME

■ **What:** Project Safe Neighborhoods, a two-year-old effort to get guns and violent criminals off the streets.

■ **Who:** U.S. Attorney, Shelby County District Attorney General, Memphis Police Department, Shelby County Sheriff's Office, U.S. Marshal's Service and the federal Bureau of Alcohol, Tobacco, Firearms and Explosives.

■ **Results:** More than 400 felons indicted or convicted in federal or state court on firearms or ammunition charges and at least 1,000 guns — from a homemade "zip" gun to revolvers and assault rifles — confiscated.

By Mike Maple

Alan Oxley, a special agent with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives, examines weapons confiscated as part of the Project Safe Neighborhoods program.

*The Commercial Appeal*
*2-19-04 - p. B1+2*

*(1 of 2)*

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 55 in case 2:04-CR-20432 was distributed by fax, mail, or direct printing on November 30, 2005 to the parties listed.

Dewun R. Settle
LAW OFFICE OF DEWUN R. SETTLE
100 N. Main Bldg.
Ste. 3001
Memphis, TN 38103

Katrina U. Earley
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Honorable Jon McCalla
US DISTRICT COURT